GRAND OPERA COMPANY, a corporation, and Marlow's Amusement Corporation, a corporation, Plaintiffs,

v.

TWENTIETH CENTURY–FOX FILM CORPORATION, a corporation, et al., Defendants.

Civ. A. 2791.

United States District Court
E. D. Illinois.

Feb. 7, 1955.

On Motion To Dismiss Oct. 24, 1955.

William M. Wolff, Murphysboro, Ill., and Everett Prosser, Carbondale, Ill., Thomas C. McConnell, Chicago, Ill., for plaintiff.

Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., and Kramer, Campbell, Costello & Wiechert, E. St. Louis, Ill., for Paramount.

Baker, Kagy & Wagner, E. St. Louis, Ill., for Fox Midwest Amusement Corp.

Simon & Collen, Chicago, Ill., and Saul Cohn, Cohn & Cohn, E. St. Louis, Ill., for Monogram Pictures Corp.

WHAM, Chief Judge.

It is to be regretted that the crowded conditions of the court's trial calendar has caused consideration of this case to be so long delayed.

The action herein is brought under various sections of the Clayton Act, 15 U.S.C.A. §§ 15, 26, the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, and the Robinson-Patman Act, 15 U.S.C.A. § 13, by the owners and operators of motion picture theaters known as "Marlow's Theater" and "Marlow's Drive-In Theater", located in and near Herrin, Illinois. Plaintiff, Grand Opera Company is the owner of "Marlow's Theater" and plaintiff, Marlow's Amusement Corporation, is the owner of "Marlow's Drive-In Theater." As defendants in this action plaintiff has joined ten motion picture distributors, hereinafter referred to as distributor defendants, and Fox Midwest Amusement Corporation, hereinafter referred to as Fox Midwest. Plaintiffs allege that defendant, Fox Midwest, owns and operates certain theaters in West Frankfort and Marion, Illinois and is engaged in the business of exhibiting motion pictures in said theaters.

The complaint filed by the plaintiffs consists of four counts. Count I alleges a claim on behalf of the plaintiff, Grand Opera Company, against the eleven defendants for treble damages in the amount of $900,000 and attorneys fees. Count II alleges a claim on behalf of the plaintiff, Marlow's Amusement Corporation, against the eleven defendants for treble damages in the amount of $300,000 and attorneys fees. Count III is similar to Count I, and Count IV is similar to Count II except that in each of the latter counts plaintiffs pray for equitable relief.

From the allegations of the complaint it appears that a system of "clearances" was in force and operated so as to affect the plaintiff's theaters in Herrin, Illinois and the theaters of Fox Midwest in Marion and West Frankfort, Illinois during the period from 1945 to the early part of 1951. These clearances created an economic advantage to the theaters owned

by Fox Midwest by granting to said theaters a priority in the exhibition of motion pictures over the theaters owned by the plaintiffs. In early 1951 plaintiffs were advised by the various producing and distributing defendants that plaintiffs would be required to bid competitively for first run feature pictures with a theater located about five miles from the city of Herrin, known as "Egyptian Drive-In Theater," with the result that the plaintiffs and the operator of said "Egyptian Drive-In Theater" are now required to bid competitively for pictures while the theaters owned by Fox Midwest are not required to bid competitively for such pictures. The delay resulting from the competitive bidding system permits theaters owned by Fox Midwest to exhibit first run feature pictures from fourteen to twenty-one days prior to the time said pictures are available to plaintiffs for exhibition. It is alleged that as a practical matter the system of competitive bidding has produced a discrimination and economic advantage in favor of Fox Midwest similar to that imposed by the clearances which were in effect prior to the year 1951.

Each of the four counts allege a conspiracy by the various defendants to discriminate against the plaintiffs and impose an unlawful restraint of trade in interstate commerce in violation of the statutes enumerated above.

One of the distributor defendants, Monogram Pictures Corporation, filed a motion to quash service of summons upon the said defendant on the ground that the person served with process was not an agent or employee of Monogram Pictures Corporation at the time of service of summons, but was employed as manager of the St. Louis branch of Monogram Pictures, Inc., which company is a wholly owned subsidiary of said defendant corporation. An affidavit and brief in support of the motion to quash was attached to said motion.

Nine of the distributor defendants filed a motion to strike paragraph 21 of each of the four counts of the complaint and a motion for summary judgment.

Fox Midwest filed a motion to dismiss the complaint, an alternative motion to strike paragraph 21, and paragraphs 15, 16, 17, 18, 19, 20, 21 and Exhibit "A" of the complaint; and a motion for summary judgment. Briefs were filed by counsel for the respective parties and oral arguments were heard by the court.

At the time of oral arguments counsel for the plaintiffs did not contest the motion to quash, and the court found that service was had upon a person who was not an agent or employee of the defendant, Monogram Pictures Corporation, and quashed the service of summons as to said defendant.

Each of the remaining defendants filed a motion to strike paragraph 21 of each count of the complaint, which said paragraph reads as follows:

"The Decree of the Expediting District Court in the case of United States v. Paramount Pictures, Inc., 70 F.Supp. 53, affirmed in part by the United States Supreme Court in 334 U.S. 131 [68 S.Ct. 915, 92 L. Ed. 1260], finding the defendant guilty of a conspiracy to restrain trade by imposing unreasonable clearances, is admissible in evidence under the provisions of Section 5 of the Clayton Act, 15 U.S.C.A. Section 16. Under the provisions of said Decree, the failure of the defendants to grant the Plaintiff the first run requested herein places the burden upon defendant distributors to sustain the legality thereof."

The basis of the foregoing paragraph in the complaint is the first paragraph of section 16 of Title 15, U.S.C.A. which reads:

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all mat-

ters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken."

As it appears that the defendants, Republic Pictures Corporation, and Fox Midwest Amusement Corporation were not parties to the action in the case of United States v. Paramount Pictures, Inc., supra, hereinafter referred to as the Paramount case, the motions to strike paragraph 21 of the various counts of the complaint, filed by the two said defendants must be sustained.

■ The consent decrees entered in the Paramount case were not the consent decrees excepted by section 16 of Title 15, U.S.C.A.; DeLuxe Theatre Corp. v. Balaban & Katz Corp., D.C., 95 F.Supp. 983; Homewood Theatre, Inc., v. Loew's Inc., D.C., 110 F.Supp. 398; and thus the decrees are admissible under said section as prima facie evidence against all defendants who were parties in the Paramount case and the paragraph setting out the decree is not necessarily subject to a motion to strike unless the decrees are inapplicable in this case for reasons appearing on the face of the complaint.

■ After consideration I have concluded that the sustainable claim set forth in the complaint, if any, is so completely different from the conspiracy condemned in the case which plaintiff pleads in paragraph 21 of the complaint that said paragraph must be stricken as to all defendants and it is so ordered. Whether the decree in that case can ever be material, I seriously doubt. If it should appear to be so in the course of the trial, should this case come to trial, it may be offered at that time.

In so far as the complaint attempts to found a claim upon an alleged conspiracy based upon unlawful clearances prior to 1951, it must fail for the reason that such claim is obviously outlawed by the statute of limitations as appears on the face of the complaint and furthermore, as shown in the complaint, the alleged

clearances were discontinued in 1951. If the present claim were solely based upon, or were merely a part of, the old conspiracy, if any, which related to clearances existing at the time of Civil Action No. 1511, and companion cases in this court, relied upon by certain defendants as constituting res adjudicata, it may well be that the contentions of the defendants who have moved for summary judgment would have to be sustained since the broad settlement contract in said cases may well be said to waive all claims based upon that particular conspiracy. I do not find it necessary to pass upon that question now.

It seems to me that the situation set up in the complaint, if it is to be sustained, must be narrowed to a simple charge of violation of the Anti-Trust laws by an unlawful method of imposing competitive bidding, as set forth in the complaint, whereby plaintiff's competitors are unreasonably favored. That practice allegedly began in 1951. It would seem to be an arrangement that must stand or fall upon its own legality or illegality, as distinguished from any earlier, supposed conspiracy. I have had no authorities called to my attention that deals with the practice of competitive bidding in a comparatively rural area consisting of separate municipalities but alleged to be in the same competitive trade area.

As now drawn the complaint is so complicated by bringing in another alleged earlier conspiracy relating to clearances, together with other evidentiary matters that the complaint and each count thereof should be redrafted and narrowed so as to present the true issue.

With that in mind the complaint will be dismissed, not on its merits but as bringing in improper issues, with leave to file an amended complaint, if desired, on or before March 6, 1955.

The motions for summary judgment are denied and the motion to dismiss, extended by the court to relate to all parties in the case, is sustained for reasons above stated, but with leave to amend as above set forth. If no amended complaint is filed on or before March 6, 1955

the order dismissing the complaint will become a final order in this case.

The motions to strike are sustained as to the present complaint without prejudice to the right of plaintiffs to insert in the amended complaint any paragraph deemed necessary except paragraph 21 of the present complaint, and the paragraphs relating to any alleged conspiracy prior to 1951.

Order accordingly.

### On Motion to Dismiss

This case again comes before the court on the pleadings by reason of various motions to dismiss the amended complaint and an alternate motion for summary judgment filed by the defendants. Previously, on February 7, 1955, for reasons stated in a written memorandum filed herein, the original complaint was dismissed by the court with leave for plaintiffs to file an amended complaint. Plaintiffs have filed an amended complaint which, like the original, names as defendants ten motion picture distributors, herein referred to as "distributor defendants", and Fox Midwest Amusement Corporation, an exhibitor, hereinafter referred to as "Fox Midwest", which owns and operates motion picture theaters in West Frankfort and Marion, Illinois.

There are four counts in the amended complaint which differ in content only as to the parties seeking relief and the type of relief sought. The claim for relief in each count is predicated upon an alleged conspiracy to violate and alleged actual violations of various statutes of the United States; namely, Sections 4 and 16 of an act commonly known as the Clayton Act, 15 U.S.C.A. §§ 15, 26; Sections 1 and 2 of the act commonly known as the Sherman Anti-Trust Act, 15 U.S. C.A., §§ 1, 2; and the act commonly known as the Robinson-Patman Act, 15 U.S.C.A. § 13.

To the amended complaint have been filed motions to dismiss by all defendants. The motions rest on various grounds, chief of which is that the amended complaint fails to state a claim upon which relief can be granted. To better understand the amended complaint and the reasons for its present form reference is made to the original complaint and to the court's memorandum sustaining motions to dismiss it, with leave to amend.

The facts alleged in the amended complaint are briefly as follows: The plaintiffs own and operate first-class motion picture theaters in Herrin, Illinois. The defendant Fox Midwest owns and operates first-class motion picture theaters in West Frankfort, Illinois, which is approximately eleven miles northeast of Herrin, and in Marion, Illinois, which is approximately ten miles southeast of Herrin. These cities and Herrin are connected by paved highways, are in the same trade area with Herrin and the said theaters owned and operated by Fox Midwest in Marion and West Frankfort are in direct competition with those of the plaintiffs in Herrin. Beginning in 1951 and continuing ever since, plaintiffs have been required by the distributor defendants to bid competitively for all first-run feature pictures with another theater, namely, Egyptian Drive-In Theater, which is located five miles from Herrin, Illinois. Said theaters owned by Fox Midwest are not required to bid competitively with anyone for first-run feature pictures. The procedure and mechanics of competitive bidding are such as to cause a delay of from two weeks to three months before the pictures upon which such required bids are submitted by plaintiffs become available for exhibition to the highest bidder. The theaters owned and operated by the defendant Fox Midwest in West Frankfort and Marion, as aforesaid, not being required to bid competitively for first-run pictures, experience no delay in securing first-run pictures for exhibition in those theaters. This results in an unfair advantage and gains to the Fox Midwest theaters and an unfair disadvantage causing substantial losses to plaintiffs. It is alleged that the competitive system of bidding above described has been imposed as a result of an un-

lawful conspiracy between the distributor defendants and the defendant Fox Midwest with intent to injure plaintiffs and their business; that said system is unfair and discriminatory and violates the federal laws; that it constitutes an unlawful restraint of trade in interstate commerce and creates an economic advantage to Fox Midwest and an economic burden on the plaintiffs to their loss and damage. On the basis of these facts plaintiffs pray for treble damages; also for injunctive relief restraining the operation of said conspiracy and for a mandatory injunction requiring the distributor defendants to extend to plaintiffs the same rights in competitive bidding and in the distribution and exhibition of first-run motion pictures as defendants extend to any other theater in Southern Illinois; and particularly the right to bid competitively for first-run pictures against the theaters owned and operated by Fox Midwest in Marion and West Frankfort.

I lay aside without decision defendants' persuasive argument that the discrimination through competitive bidding alleged in the amended complaint is but a continuance of the discriminatory practices forever settled between the parties in the 1947 cases. This defense will better be presented as an affirmative defense if and when this case is brought to actual trial. Rule 8(c), Fed.Rules Civ. Proc. 28 U.S.C.A. For the purpose of the motions before the court I have considered the amended complaint as charging a conspiracy to discriminate against plaintiffs begun in 1951 through the imposition of the alleged requirement that plaintiffs bid for first-run pictures with or against Egyptian Drive-In Theater without permitting plaintiffs to bid competitively for first-run pictures against the theaters of Fox Midwest located in Marion and West Frankfort. I have assumed as true that this practice has resulted in loss to the plaintiffs and has been to the advantage of the said theaters of Fox Midwest; also that interstate commerce has been affected.

It has been observed that plaintiffs make no contention that the requirement

by the distributor defendants of competitive bidding between plaintiffs and the Egyptian Drive-In Theater is improper. No attack is made upon the legality of this arrangement. The complaint is that distributor defendants have refused to accede to plaintiffs' oral and written requests that plaintiffs be given the right to bid for first-run motion pictures against said theaters of Fox Midwest located in West Frankfort and Marion. To secure such privilege is the object of the equity side of this suit and the claim for damages is grounded upon denial of this privilege since 1951 when the bidding arrangement above described was begun.

The geographical and other facts as alleged in the complaint are as follows: The Egyptian Drive-In Theater is located five miles from Herrin. The city of Marion is located ten miles and the city of West Franfort eleven miles from Herrin. The three cities are connected by paved roads and are in the same trade area. The theaters of Fox Midwest in Marion and West Frankfort are in direct competition with plaintiffs' theaters in Herrin.

■ The court takes judicial notice that the cities of Herrin, Marion and West Frankfort are incorporated municipalities each separated from the others by several miles of rural area in which are located certain small villages. Herrin and Marion are in Williamson County of which Marion is the county seat, while West Frankfort is in Franklin County, approximately twelve miles directly north of Marion and seven miles directly south of Benton, the county seat of Franklin County. The first-named three cities are so located as to form an irregular triangle of which Herrin is the western apex. The general census of 1950 listed the four cities as having populations as follows: Herrin, 9,331; Marion, 10,459; West Frankfort, 11,384; and Benton, 7,848.

■ Though it be true that the three cities in question lie in a competitive trade area and because of connecting highways the theaters in Marion and

West Frankfort are in direct competition with those in Herrin, reason teaches that such competition cannot be as direct or of the same character as the competition between theaters of similar size and quality lying in or near and serving the same city. The fact that competitive bidding is required between the theaters in and near Herrin under conditions which prevail there does not demand that the requirement be extended to theaters in other and distinct municipalities separated by rural areas just because they are located in the same general trade area and thus are competitors for the theater patronage throughout the area. If such were the law, the system of competitive bidding would have to be extended so as to become unwieldy and impractical. No authority has been produced that holds a requirement of competitive bidding to be illegal in a suitably competitive area within and adjacent to a small city and no attack is here made on the existing arrangement at Herrin. If such attack were made, the Egyptian Drive-In Theater would be an indispensable party. Nor has any authority been produced which holds that because a system of competitive bidding has been established between competing, separately owned theaters in one municipality that a court of equity has power to require that competing theaters in other municipalities in the same trade area be included in such requirement. In absence of such authorities and following what seems to be a practical line of reasoning under the authorities that have been adduced, my conclusions are: (1) That plaintiffs' amended complaint does not make out a violation of the so-called Clayton Act, or the Sherman Anti-Trust Act, or the Robinson-Patman Act; (2) nor a claim for damages upon which relief can be granted; and (3) fails to make out a case for equitable or injunctive relief.

The amended complaint seems inadequate, also, in that it fails to state any facts from which it may be concluded that the public interest has been injuriously affected by the alleged conspiracy or that Fox Midwest has had any part in it except the bare allegation that the conspiracy was between the distributor defendants and Fox Midwest.

The amended complaint is dismissed as not stating a claim upon which relief can be granted.